## UNITED STATES COURT OF INTERNATIONAL TRADE

NEXTEEL CO., LTD. et al.,

    Plaintiff and Consolidated Plaintiffs,

and

HUSTEEL CO., LTD. and HYUNDAI
STEEL COMPANY,

    Plaintiff-Intervenors,

v.

UNITED STATES,

    Defendant,

and

CALIFORNIA STEEL INDUSTRIES, INC.
et al.,

    Defendant-Intervenors and
    Consolidated Defendant-Intervenors.

Before:  Honorable Claire R. Kelly,
            Judge

Consol. Court No. 20-03898

PUBLIC DOCUMENT

MEMORANDUM IN SUPPORT OF MOTION OF
CONSOLIDATED PLAINTIFF AND PLAINTIFF-INTERVENOR,
HYUNDAI STEEL COMPANY,
FOR JUDGMENT UPON THE AGENCY RECORD

Robert G. Gosselink
Jarrod M. Goldfeder
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

*Counsel to Hyundai Steel Company*
*Consolidated Plaintiff and Plaintiff-Intervenor*

Dated:  May 24, 2021

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... ii

I.    STATEMENT PURSUANT TO RULE 56.2(c) ................................................ 1

      A.    Administrative Determination under Review ....................................... 1

      B.    Issues Presented ................................................................................... 1

      C.    Standard of Review............................................................................... 2

II.   STATEMENT OF FACTS ............................................................................... 3

III.  SUMMARY OF ARGUMENT ........................................................................ 6

IV.   ARGUMENT .................................................................................................... 7

      A.    Commerce's "Particular Market Situation" Determination and Other Aspects of
            Commerce's Final Antidumping Duty Calculations Were Unsupported by
            Substantial Evidence and Otherwise Contrary to Law ........................... 7

      B.    The Court Should Direct Commerce to Recalculate the Review-Specific Average
            Rate Assigned to Non-Examined Companies, Including Hyundai Steel, if the
            Mandatory Respondents' Final Weighted-Average Dumping Margins Change as a
            Result of the Court's Ruling ................................................................. 9

V.    CONCLUSION................................................................................................ 11

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................2

19 U.S.C. § 1673d(c)(5)..................................................................................................10

19 U.S.C. § 1677b(b) .......................................................................................................8

19 U.S.C. § 1677b(e) ........................................................................................................8

19 U.S.C. § 1677f-1(c)(2)(B)..........................................................................................10

**Judicial Decisions**

Amanda Foods (Vietnam) Ltd. v. United States, 35 CIT __, 774 F. Supp. 2d 1286 (2011) .........10

Asociacion Columbiana de Exportadores de Flores v. United States, 22 CIT 173,
6 F. Supp. 2d 865 (1998) ................................................................................................2

Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States, 426 F.Supp.3d 1395
(Ct. Int'l Trade 2020)........................................................................................................8

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962) ...............................2

Consolidated Edison Co. of New York, Inc. v. N.L.R.B., 305 U.S. 197 (1938)...............2

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607 (1966) ...............................................2

Dong-A Steel Company v. United States, 475 F.Supp.3d 1317 (Ct. Int'l Trade 2020) .................8

Fujitsu General. Ltd. v. United States, 88 F.3d 1034 (Fed. Cir. 1996)............................2

Husteel Co., Ltd. v. United States, 426 F.Supp.3d 1376 (Ct. Int'l Trade 2020)..............8

Hyundai Steel Company v. United States, 483 F.Supp.3d 1273 (Ct. Int'l Trade 2020).................8

NTN Bearing Corp. v. United States, 74 F.3d 1204 (Fed. Cir. 1995) ..............................3

Nucor Corp. v. United States, 32 CIT 1380, 594 F. Supp. 2d 1320 (2008).....................2

PAM, S.p.A. v. United States, 582 F.3d 1336 (Fed. Cir. 2009) .......................................2

Rhone-Poulenc, Inc. United States, 20 CIT 573, 927 F. Supp. 451 (1996).....................2

Saha Thai Steel Pipe Public Company Limited v. United States, 422 F.Supp.3d 1363
(Ct. Int'l Trade 2019), opinion after remand by 487 F.Supp.3d 1323 (Ct. Int'l Trade 2020) ........8

Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ......................................................2


**Administrative Determinations**

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity
to Request Administrative Review, 83 Fed. Reg. 62,293 (Dep't Commerce Dec. 3, 2018) ...........3

Initiation of Antidumping and Countervailing Duty Administrative Reviews,
84 Fed. Reg. 9,297 (Dep't Commerce Mar. 14, 2019) ............................................................. 3-4

Welded Line Pipe from the Republic of Korea, 85 Fed. Reg. 76,517 (Dep't Commerce Nov. 30,
2020) (final results of antidumping duty administrative review; 2017-2018), and accompanying
unpublished Issues and Decision Memorandum (Dep't Commerce Nov. 20, 2020) ............1, 6, 10

Welded Line Pipe from the Republic of Korea, 85 Fed. Reg. 7,268 (Dep't Commerce Feb. 7,
2020) (preliminary results of antidumping duty administrative review; 2017–2018), and
accompanying Preliminary Decision Memorandum (Dep't Commerce Jan. 31, 2020)..................5

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

## I.     STATEMENT PURSUANT TO RULE 56.2(c)

Consolidated Plaintiff and Plaintiff-Intervenor, Hyundai Steel Company (hereinafter,

"Consolidated Plaintiff/Plaintiff-Intervenor" or "Hyundai Steel"), a foreign producer and

exporter of welded line pipe from Korea, submits this memorandum in support of its Motion for

Judgment on the Agency Record pursuant to USCIT Rule 56.2.

### A.     Administrative Determination under Review

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final

results of the third administrative review in Welded Line Pipe from the Republic of Korea, 85

Fed. Reg. 76,517 (Dep't Commerce Nov. 30, 2020) (final results of antidumping duty

administrative review; 2017-2018) ("Final Results"), PD 860.[1]  The challenged findings and

conclusions of fact and law are set out primarily in Commerce's unpublished Issues and Decision

Memorandum for the Final Results of the 2017–2018 Administrative Review of the

Antidumping Order on Welded Line Pipe from the Republic of Korea, Case No. A-580-876

(Dep't Commerce Nov. 20, 2020) ("Final Decision Memo"), PD 854.

### B.     Issues Presented

Consolidated Plaintiff/Plaintiff-Intervenor seeks judgment on the agency record with

respect to the following issues:

1.     Whether Commerce's determination in the Final Results to calculate the review-
       specific average rate applicable to all other (non-examined) companies, including
       Hyundai Steel, based on Commerce's finding of a "particular market situation" in
       the Korean line pipe market and the application of corresponding adjustments to
       the input costs of the two mandatory respondents—which was based on a highly
       unreliable and inaccurate regression-based analytical model prepared by the
       domestic interested parties—was unsupported by substantial evidence in the
       administrative record and otherwise not in accordance with law.

---

[1] Citations to the administrative record are to the public record document number ("PD")
followed by the page or exhibit number based on the January 22, 2021, administrative index list
filed with this court.  See ECF No. 52.

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

      2.      Whether Commerce's determinations with respect other issues addressed in the memoranda of law filed concurrently by Plaintiff NEXTEEL Co., Ltd. and Consolidated Plaintiff SeAH Steel Corporation, which in turn determined the calculation of the review-specific average rate that Commerce applied to Hyundai Steel, were unsupported by substantial evidence in the administrative record and otherwise not in accordance with law.

    C.    **Standard of Review**

When evaluating factual determinations contained in the final results of an antidumping duty administrative review, the Court must sustain Commerce's final results, unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); see also Fujitsu General, Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619-20 (1966) (quoting Consolidated Edison Co. of New York, Inc. v. N.L.R.B., 305 U.S. 197, 229 (1938)); PAM, S.p.A. v. United States, 582 F.3d 1336, 1339 (Fed. Cir. 2009). In order for a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962); Nucor Corp. v. United States, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008). Additionally, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).

This Court has found Commerce's determinations unlawful "where Commerce has relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." Rhone-Poulenc, Inc. United States, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); see also Asociacion Columbiana de Exportadores de Flores v. United States, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998). Even where Commerce has acted in conformity with its statutory and

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

regulatory obligations, the resulting dumping margin must be examined for its accuracy and

fairness.  See NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995).


II.      **STATEMENT OF FACTS**

Consolidated Plaintiff/Plaintiff-Intervenor concurs with and incorporates by reference the

statement of facts contained in the Rule 56.2 briefs filed today by Plaintiff NEXTEEL Co., Ltd.

("NEXTEEL"), Consolidated Plaintiff SeAH Steel Corporation ("SeAH"), and Plaintiff-

Intervenor Husteel Co., Ltd. ("Husteel").  Consolidated Plaintiff/Plaintiff-Intervenor Hyundai

Steel provides below a brief statement of facts relevant to the calculation of the "review-specific

average rate" rate that Commerce applied to Hyundai Steel as a non-examined company subject

to the challenged review.

On December 3, 2018, Commerce published a notice of opportunity to request an

administrative review for the third administrative review period, i.e., December 1, 2017, through

November 30, 2018.  See Antidumping or Countervailing Duty Order, Finding, or Suspended

Investigation; Opportunity to Request Administrative Review, 83 Fed. Reg. 62,293 (Dep't

Commerce Dec. 3, 2018).  On December 31, 2018, Hyundai Steel submitted a timely written

request to participate as a respondent in Commerce's administrative review.  See PD 2.

On March 14, 2019, Commerce initiated the third administrative review covering all

Korean producers and exporters of subject merchandise for which it received timely review

requests, including Hyundai Steel (identified as "Hyundai Steel Company/Hyundai HYSCO").

See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg.

9,297, 9,299 (Dep't Commerce Mar. 14, 2019) ("Initiation Notice"), PD 6.  The Initiation Notice

indicated that, in the event Commerce limited the respondents selected for individual

examination in accordance with section 777A(c)(2) of the Act, Commerce would select

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

mandatory respondents for individual examination based upon U.S. Customs and Border

Protection entry data.  Id. at 9,297-98.

On March 28, 2019, Commerce issued a memorandum in which it determined not to

select Hyundai Steel as a mandatory respondent for individual examination, but rather, it chose

only NEXTEEL and SeAH as mandatory respondents for individual examination.  See

Respondent Selection Memorandum (Mar. 28, 2019) at 3-4, PD 20.  NEXTEEL and SeAH fully

participated in the proceeding as mandatory respondents and both cooperated with Commerce in

all aspects of the administrative review.

On June 25, 2019, California Steel Industries, TMK IPSCO, and Welspun Tubular LLC

USA (collectively, "Domestic Interested Parties"), submitted an allegation that a "particular

market situation" ("PMS") existed with respect to welded line pipe during the period of review.

Specifically, the Domestic Interested Parties alleged that the following four factors distorted the

mandatory respondents' costs of production ("COP") of subject merchandise such that costs of

the mandatory respondents' hot-rolled coil ("HRC") inputs did not accurately reflect the COP for

the subject merchandise in the ordinary course of trade:  (1) the Government of Korea's

("GOK") countervailable subsidization of HRC; (2) global overcapacity, driven by China, and

the resulting distortive pricing of unfairly traded Chinese HRC, other HRC imports, and Korean

HRC; (3) "strategic alliances" between Korean HRC producers and downstream pipe producers;

and (4) the government subsidization of electricity in Korea.  The Domestic Interested Parties

argued that Commerce should counteract this "particular market situation" by adjusting the

respondents' HRC input costs.

On July 17, 2019, Commerce issued a letter to all interested parties in which it accepted

the Domestic Interested Parties' factual information submitted in support of their PMS allegation

**Consol. Court No. 20-03898**
**Hyundai Steel's Rule 56.2 Memorandum**

and afforded respondent interested parties an opportunity to submit factual information to rebut,

clarify, or correct the factual information contained in the Domestic Interested Parties' PMS

allegation.  See PD 699.  On August 12, 2019, Hyundai Steel and other respondent interested

parties timely submitted comments and factual information to rebut, clarify, or correct the factual

information contained in the Domestic Interested Parties' PMS allegation.

On January 31, 2020, Commerce issued its preliminary results of administrative review in

which it determined that a PMS existed with respect to HRC inputs.  See Welded Line Pipe from

the Republic of Korea, 85 Fed. Reg. 7,268 (Dep't Commerce Feb. 7, 2020) ("Preliminary

Results") (preliminary results of antidumping duty administrative review; 2017–2018), PD 812,

and accompanying Preliminary Decision Memorandum (Dep't Commerce Jan. 31, 2020), PD

796.  Commerce based the upward cost adjustment to the mandatory respondents' direct material

costs on the Domestic Interested Parties' regression analysis, which employed a regression

coefficient (i.e., the estimated "beta") for the "uneconomic capacity" explanatory variable.

In its Preliminary Results, Commerce calculated antidumping duty margins of 4.81

percent ad valorem for NEXTEEL and 3.45 percent ad valorem for SeAH.  See Preliminary

Results, 85 Fed. Reg. at 7,269.  As part of its Preliminary Results, Commerce assigned a

preliminary antidumping duty rate of 3.99 percent ad valorem to all covered producers and

exporters that Commerce did not select for individual examination—including Hyundai Steel

(listed as "Hyundai Steel Company/Hyundai HYSCO")—based on the average of the rates

calculated for the two mandatory respondents.  Id.

On March 11, 2020, and March 18, 2020, interested parties—including Consolidated

Plaintiff/Plaintiff-Intervenor (see PD 823 and PD 831)—submitted case and/or rebuttal briefs

addressing issues in the Preliminary Results.  Among other related arguments, Hyundai Steel

**Consol. Court No. 20-03898**
**Hyundai Steel's Rule 56.2 Memorandum**

argued that Commerce should not make any PMS adjustment at all, but that if Commerce did

make any PMS adjustment, it should base such PMS adjustment on more contemporaneous and

accurate data.

On November 20, 2020, Commerce issued its <u>Final Results</u> in which it affirmed its

preliminary decision that a PMS existed and to quantify a PMS adjustment using the Domestic

Interested Parties' regression-based calculation method, but it modified the methodology used to

calculate the PMS adjustment rate.  As a consequence of this and another adjustment made to the

calculation for SeAH, in the <u>Final Results</u>, Commerce calculated antidumping duty margins of

15.07 percent *ad valorem* for NEXTEEL and 9.33 percent *ad valorem* for SeAH.  <u>See</u> <u>Final</u>

<u>Results</u>, 85 Fed. Reg. at 76,518.  Commerce also assigned a final antidumping duty rate of 11.60

percent *ad valorem* to the non-examined companies—including Hyundai Steel—based on the

average of the final rates calculated for the two mandatory respondents.  <u>Id.</u> at 76,519.

The legal and factual bases for the <u>Final Results</u> were set forth in Commerce's

unpublished Issues and Decision Memorandum, dated November 20, 2020, PD 854.

**III.   SUMMARY OF ARGUMENT**

Commerce's calculation of the review-specific average rate applicable to other (non-

examined) respondent companies in the third administrative review, including Hyundai Steel,

was unsupported by substantial record evidence and otherwise not in accordance with law.

Hyundai Steel was assigned a final antidumping duty margin that was an average of the rates

assigned to NEXTEEL and SeAH.  Therefore, Consolidated Plaintiff/Plaintiff-Intervenor joins in

the arguments set forth in the memoranda of law filed separately today by Plaintiff NEXTEEL,

Consolidated Plaintiff SeAH, and Plaintiff-Intervenor Husteel that Commerce's finding of a

PMS based on its consideration of certain market factors—each of which when considered

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

individually could not support such a finding—and corresponding quantification of a PMS

adjustment using a highly flawed regression-based methodology, was unsupported by substantial

record evidence and otherwise not in accordance with law.

Consolidated Plaintiff/Plaintiff-Intervenor requests that any relief granted to NEXTEEL

and SeAH as a result of this appeal also be extended to the review-specific average rate

applicable to Hyundai Steel, which was a non-examined respondent company whose rate was

based on the weighted-average dumping margins calculated for NEXTEEL and SeAH.

IV.     **ARGUMENT**

      A.     **Commerce's "Particular Market Situation" Determination and Other
Aspects of Commerce's Final Antidumping Duty Calculations Were
Unsupported by Substantial Evidence and Otherwise Contrary to Law**

Consolidated Plaintiff/Plaintiff-Intervenor concurs with and incorporates by reference the

arguments set forth in the USCIT Rule 56.2 memoranda of law filed concurrently today by

Plaintiff NEXTEEL, Consolidated Plaintiff SeAH, and Plaintiff-Intervenor Husteel that the

calculation of the "particular market situation" adjustment used in calculating its antidumping

duty rates for NEXTEEL and SeAH—which in turn formed the basis of the average rate applied

to non-examined companies including Hyundai Steel—was unsupported by substantial record

evidence and was otherwise not in accordance with law.

First, Consolidated Plaintiff/Plaintiff-Intervenor concurs with Plaintiff NEXTEEL,

Consolidated Plaintiff SeAH, and Plaintiff-Intervenor Husteel that Commerce's determination

that a PMS existed in Korea that impacted the mandatory respondents' HRC costs was not

supported by substantial record evidence.

Second, Commerce's application of a PMS adjustment to SeAH's reported costs was

otherwise not in accordance with law where, as in this case, Commerce based normal value for

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

SeAH on the company's home market sales, rather than on constructed value ("CV").  This

Court has now held in multiple opinions that Commerce is statutorily permitted to modify a

respondent's reported costs only when calculating normal value using CV under 19 U.S.C. §

1677b(e), and not when normal value is calculated using selling prices or for purposes of the

sales-below-cost test under 19 U.S.C. § 1677b(b).  See, e.g., Saha Thai Steel Pipe Public

Company Limited v. United States, 422 F.Supp.3d 1363 (Ct. Int'l Trade 2019), opinion after

remand by 487 F.Supp.3d 1323 (Ct. Int'l Trade 2020); Husteel Co., Ltd. v. United States, 426

F.Supp.3d 1376 (Ct. Int'l Trade 2020); Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v.

United States, 426 F.Supp.3d 1395 (Ct. Int'l Trade 2020); Dong-A Steel Company v. United

States, 475 F.Supp.3d 1317 (Ct. Int'l Trade 2020); Hyundai Steel Company v. United States, 483

F.Supp.3d 1273 (Ct. Int'l Trade 2020).

Having already ruled on this precise question of law, the Court should again find that

Commerce's application of a PMS adjustment to SeAH for purposes of 19 U.S.C. § 1677b(b)

was contrary to law.  And because Commerce had no statutory authority to adjust SeAH's costs

of production for purposes of performing the sales-below-cost test, Commerce in turn unlawfully

applied that methodology when determining the review-specific average rate that it assigned to

Hyundai Steel, in part, based on the antidumping duty rate calculated for SeAH.

Furthermore, Commerce relied on a regression-based analysis prepared by the Domestic

Interested Parties that purported to quantify the relationship between global capacity and the

price of HRC inputs, and it applied this adjustment in order to calculate NEXTEEL's and

SeAH's costs.  Although no such adjustment was warranted, the record contained substantial

evidence demonstrating the invalidity of the regression-based cost adjustment on numerous

grounds.  Commerce's determination to nonetheless rely on the Domestic Interested Parties'

Consol. Court No. 20-03898
**Hyundai Steel's Rule 56.2 Memorandum**

calculations in making this extraordinary cost adjustment was unsupported by substantial record

evidence.  In this regard as well, Consolidated Plaintiff/Plaintiff-Intervenor concurs with and

incorporates by reference the arguments of Plaintiff NEXTEEL, Consolidated Plaintiff SeAH,

and Plaintiff-Intervenor Husteel.  Because this adjustment to NEXTEEL's and SeAH's costs

directly affected the final antidumping duty rates calculated for these two mandatory respondents

that Commerce used, in turn, to calculate the review-specific average rate assigned to non-

examined companies, including Consolidated Plaintiff/Plaintiff-Intervenor, Commerce's

calculation of the review-specific average rate applied to Consolidated Plaintiff/Plaintiff-

Intervenor was not supported by substantial record evidence.

Finally, Consolidated Plaintiff/Plaintiff-Intervenor concurs with and incorporates by

reference the arguments concerning other calculation-related issues addressed in the memoranda

of law filed concurrently by Plaintiff NEXTEEL and Consolidated Plaintiff SeAH.  To the extent

the Court determines that those aspects of Commerce's determination were unsupported by

substantial evidence in the administrative record and/or otherwise not in accordance with law,

such determinations likewise impacted the review-specific average rate that Commerce applied

to Hyundai Steel, and thus remand is warranted as to the review-specific average rate.

> **B.      The Court Should Direct Commerce to Recalculate the Review-Specific Average Rate Assigned to Non-Examined Companies, Including Hyundai Steel, if the Mandatory Respondents' Final Weighted-Average Dumping Margins Change as a Result of the Court's Ruling**

If the weighted-average dumping margins for NEXTEEL or SeAH, or both, are

recalculated as a result of this litigation, the Court also should require Commerce to revise the

final weighted-average antidumping duty margin assigned to Hyundai Steel, which was not

selected for individual examination during the underlying review.

Consol. Court No. 20-03898
Hyundai Steel's Rule 56.2 Memorandum

Where Commerce limits its examination of potential respondents in an administrative review pursuant to Section 777A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677f-1(c)(2)(B), neither the statute nor Commerce's regulations directly address how a specific margin should be applied to companies not individually selected for examination in an administrative review.  Although Section 735 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673d(c)(5)(A), provides that, in an investigation, the estimated rate for non-individually examined respondents shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, there is no corresponding statutory provision for calculating a rate for non-individually examined respondents in an administrative review.  See, e.g., Amanda Foods (Vietnam) Ltd. v. United States, 35 CIT __, ___, 774 F. Supp. 2d 1286, 1290 (2011) (noting that the statute does not address the methodology that Commerce must use when assigning dumping margins to companies that were not individually investigated in an administrative review).  Nonetheless, relying upon 19 U.S.C. § 1673d(c)(5), Commerce has developed a well-established practice of assigning dumping margins to non-individually reviewed companies in market-economy cases based on an average of the estimated weighted-average dumping margins established for those exporters and producers individually examined, excluding any zero or *de minimis* margins, and any margins determined entirely on the basis of facts otherwise available.  See Final Results, 85 Fed. Reg. at 76,518-19.

Therefore, if the dumping margin for mandatory respondents, NEXTEEL and/or SeAH, change as a result of the Court's decision in this action, Consolidated Plaintiff/Plaintiff-Intervenor respectfully submits that Commerce also should be required to recalculate the rate for Hyundai Steel, which was a non-individually investigated respondent.  Because Commerce's

**Consol. Court No. 20-03898**
**Hyundai Steel's Rule 56.2 Memorandum**

calculation of the final antidumping duty rates assigned to NEXTEEL and SeAH was

unsupported by substantial evidence and was otherwise not in accordance with law, Commerce's

calculation of the review-specific average rate assigned to Hyundai Steel as a non-examined

company, which was based on NEXTEEL's and SeAH's final antidumping rates, likewise was

unsupported by substantial evidence and was otherwise not in accordance with law.

## V.     CONCLUSION

For the reasons set forth above, the Final Results issued by Commerce in the third

administrative review involving Welded Line Pipe from the Republic of Korea were not

supported by substantial evidence and/or were not otherwise in accordance with law.  Hyundai

Steel respectfully requests that the Court remand this case to Commerce with instructions to

recalculate Hyundai Steel's final weighted-average dumping margin in a manner consistent with

the Court's opinion.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Robert G. Gosselink
Jarrod M. Goldfeder

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

*Counsel to Hyundai Steel Company*
Dated:  May 24, 2021                          *Consolidated Plaintiff and Plaintiff-Intervenor*

11

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NEXTEEL CO., LTD. et al.,** | |
| **Plaintiff and Consolidated Plaintiffs,** | |
| **and** | |
| **HUSTEEL CO., LTD. and HYUNDAI STEEL COMPANY,** | |
| **Plaintiff-Intervenors,** | **Before:  Honorable Claire R. Kelly, Judge** |
| **v.** | |
| **UNITED STATES,** | **Consol. Court No. 20-03898** |
| **Defendant,** | |
| **and** | |
| **CALIFORNIA STEEL INDUSTRIES, INC. et al.,** | |
| **Defendant-Intervenors and Consolidated Defendant-Intervenors.** | |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Memorandum of Law in Support of Consolidated Plaintiff and Plaintiff-Intervenor's Rule 56.2 Motion for Judgment on the Agency Record, dated May 24, 2021, complies with the word-count limitation described in the Standard Chambers Procedures.  The memorandum of law contains 3,011 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and undersigned counsel's signature block.

**Consol. Court No. 20-03898**                                        **Page 2**
**Certificate of Compliance**

                                           Respectfully submitted,

                                           /s/ Jarrod M. Goldfeder
                                           Robert G. Gosselink
                                           Jarrod M. Goldfeder
                                           **TRADE PACIFIC PLLC**
                                           700 Pennsylvania Avenue, SE
                                           Suite 500
                                           Washington, D.C.  20003
                                           (202) 223-3760

                                           *Counsel to Hyundai Steel Company*
Dated:  May 24, 2021                       *Consolidated Plaintiff and Plaintiff-Intervenor*