# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| NEXTEEL CO., LTD. ET AL., )<br> )<br>   Plaintiff and Consolidated )<br>   Plaintiffs, )<br> )<br>and )<br> )<br>HUSTEEL CO., LTD. and HYUNDAI )<br>STEEL COMPANY, )<br> )<br>   Plaintiff-Intervenors, )<br> )<br>   v. )<br> )<br>UNITED STATES, )<br> )<br>   Defendant, )<br> )<br>and )<br> )<br>CALIFORNIA STEEL INDUSTRIES, INC. )<br>ET AL., )<br> )<br>   Defendant-Intervenors and )<br>   Consolidated Defendant )<br>   Intervenors. )<br> ) | Consol. Ct. No. 20-03898 |

### PLAINTIFF-INTERVENOR HUSTEEL CO., LTD.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Donald B. Cameron  
Julie C. Mendoza  
R. Will Planert  
Brady W. Mills  
Mary S. Hodgins  
Eugene Degnan  

October 20, 2021

**MORRIS, MANNING & MARTIN LLP**  
1401 Eye Street, N.W., Suite 600  
Washington, D.C. 20005  
(202) 408-5153  

*Counsel to Plaintiff-Intervenor Husteel Co., Ltd.*

**TABLE OF CONTENTS**

I.  ARGUMENT ................................................................................................................... 2
    A.  Commerce's Interpretation of Section 1677b Is Contrary to Law .......................... 2
    B.  The Four Factors Allegedly Causing the PMS Are Unsupported ........................... 3
        i.  Hot Rolled Coil Inputs ....................................................................................... 4
        ii. Korean Imports of HRC From China ............................................................... 4
        iii. Strategic Alliances ............................................................................................ 5
        iv. Government Involvement in the Electricity Market Does Not Contribute to a
            PMS in Korea ................................................................................................... 5
    C.  Commerce's Adjustment To COP For The Sales-Below-Cost Test To Address A
        PMS Is Not In Accordance With The Law ............................................................. 6
    D.  The Final Results For NEXTEEL And SeAH Are Otherwise Not Supported By
        Substantial Evidence And Are Not In Accordance With Law, Which Resulted In
        The Overstatement Of The Average Dumping Margin Assigned To Husteel ........ 7
II. CONCLUSION AND RELIEF REQUESTED .................................................................. 8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*,
   426 F. Supp. 3d 1395 (Ct. Int'l Trade 2020) ................................................................7

*Husteel Co. v. United States*,
   426 F. Supp. 3d 1376 (Ct. Int'l Trade 2020) ...............................................3, 5, 6, 7

*Husteel Co. v. United States*,
   471 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) ..................................................3, 5, 6

*Maverick Tube Corp. v. United States*,
   273 F. Supp. 3d 1293 (Ct. Int'l Trade 2017) .................................................................6

*NEXTEEL Co. v. United States*,
   355 F. Supp. 3d 1336 (Ct. Int'l Trade 2019) .................................................................5

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*,
   422 F. Supp. 3d 1363 (Ct. Int'l Trade 2019) .................................................................7

*Union Steel Mfg. Co., Ltd. v. United States*,
   36 C.I.T. 717, 837 F. Supp. 2d 1307 (Ct. Int'l Trade 2012) ........................................8

*Union Steel Mfg. Co., Ltd. v. United States*,
   968 F. Supp. 2d 1297 (Ct. Int'l Trade 2014) .................................................................8

**Statutes**

19 U.S.C. § 1677b(e) ....................................................................................................3, 4

**Other Authorities**

*Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products from
   Korea: Final Results of Antidumping Duty Administrative Review*, 62 Fed.
   Reg. 18,404, 18,412 (Dep't Commerce Apr. 15, 1997)..............................................6

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products
   From the Republic of Korea: Final Affirmative Determination*, 81 Fed. Reg.
   53,439 (Dep't Commerce Aug. 12, 2016) ...................................................................6

*Countervailing Duty Order on Certain Hot-Rolled Steel Flat Products From the
   Republic of Korea: Amended Final Results of the First Administrative Review*,
   84 Fed. Reg. 35,604 (Dep't Commerce July 24, 2019) ..............................................4

Korea. *Welded Line Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review* 85 Fed. Reg. 76,517 (Dep't Commerce Nov. 30, 2020)................................................................................................4

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| **NEXTEEL CO., LTD. ET AL.,** ) | |
| ) | |
| Plaintiff and Consolidated ) | |
| Plaintiffs, ) | |
| ) | |
| and ) | |
| ) | |
| **HUSTEEL CO., LTD. and HYUNDAI** ) | |
| **STEEL COMPANY,** ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. ) | |
| ) | |
| **UNITED STATES,** ) | Consol. Ct. No. 20-03898 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| **CALIFORNIA STEEL INDUSTRIES, INC.** ) | |
| **ET AL.,** ) | |
| ) | |
| Defendant-Intervenors and ) | |
| Consolidated Defendant ) | |
| Intervenors. ) | |

**PLAINTIFF-INTERVENOR HUSTEEL CO., LTD.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

In accordance with Rule 56.2 of the Rules of this Court, and the July 23, 2021 Amended Scheduling Order, ECF No. 67, Plaintiff-Intervenor Husteel Co., Ltd. ("Husteel") files this reply brief in opposition to the September 22, 2021 response briefs filed by the Defendant, The United States, and Defendant-Intervenors California Steel Industries, Welspun Tubular LLC USA, American Cast Iron Pipe Company, Stupp Corporation, Maverick Tube Corporation, and IPSCO Tubulars Inc. ("Defendant-Intervenors"). *See* Def.'s Resp. in Opp'n to Mot. for J. upon the

1

Admin. R. (Sept. 22, 2021), ECF No. 69 ("Defendant's Br."); Def. Intervenors American Cast Iron Pipe Company, Stupp Corporation, California Steel Industries, Inc. and Welspun Tubular LLC USA Resp. to Rule 56.2 Mots. for J. on the Agency R. (Sept. 22, 2021), ECF No. 71 ("Defendant-Intervenors' Br."); Def. Intervenors Maverick and IPSCO Resp. to Rule 56.2 Mots. for J. on the Agency R. (Sept. 22, 2021), ECF No. 70 ("Defendant-Intervenors Maverick IPSCO's Br."). As discussed herein, the arguments made by Defendant and Defendant-Intervenors are unpersuasive and should be rejected. The United States Court of International Trade ("the Court" or "the CIT") should grant Husteel's Rule 56.2 Motion for Judgment Upon the Agency Record and order the U.S. Department of Commerce ("Commerce") to recalculate the final dumping margins of the mandatory respondents, and Husteel, accordingly.

I. **ARGUMENT**

   A. **Commerce's Interpretation of Section 1677b Is Contrary to Law**

Commerce's legal theory that under Section 1677b it can make a determination that costs of producing the subject merchandise are distorted in a particular market without examining any evidence of those costs is irrational and contrary to the law. Commerce argues in its Response Brief that under the Statute it is only necessary to show that the particular market in general is distorted and from that it can conclude that the costs to produce the merchandise under review must be distorted. Defendant's Br. at 14. *See also* Defendant-Intervenors' Br. at 10-12. Commerce asserts it is not necessary to compare the actual costs to what would be the cost of production in the ordinary course of trade, or indeed to base this analysis on specific data at all (*i.e.*, "what plaintiff characterizes as a data- and respondent-specific analysis"). *Id.* at 13. This theory is contrary to law.

The statute allows that a particular market situation ("PMS") can exist "{f}or purposes of Paragraph 1, if a particular market situation exists such that the cost of materials and fabrication and other processing of any kind does not accurately reflect the Cost of Production in the ordinary course of trade." 19 U.S.C. § 1677b(e). "Paragraph 1" refers specifically to "the cost of materials and fabrication…employed in producing the merchandise." *Id.* Thus, the PMS statute specifically directs that Commerce must base its determination on the actual costs of producing the merchandise. Accordingly, Commerce's legal theory that a PMS can exist in some general sense without any data or cost analysis is contrary to law.

Further, this Court has noted that finding a distortion in the market is not sufficient in itself to establish a PMS, but that Commerce must demonstrate both that there are distortions present in the market and that those distortions prevent a proper comparison of normal value with export price or constructed export price. *Husteel Co. v. United States*, 426 F. Supp. 3d 1376, 1390 (Ct. Int'l Trade 2020); *see also Husteel Co. v. United States*, 471 F. Supp. 3d 1349, 1362 (Ct. Int'l Trade 2020). Commerce has not even attempted to meet this second prong of the analysis, which would also entail examining the actual costs.

### B. The Four Factors Allegedly Causing the PMS Are Unsupported

The four factors alleged by Commerce to cause a PMS are unsupported by record evidence. Commerce determined that the following four factors that distorted the cost of the hot-rolled coil ("HRC") input into welded line pipe ("WLP") during the POR: (1) subsidization of Korean HRC; (2) the distortive pricing of Chinese HRC exports; (3) strategic alliances between Korean HRC suppliers and Korean WLP producers; and (4) distortive government control over electricity prices in Korea. *Welded Line Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review*; 2017-2018, 85 Fed. Reg. 76,517 (Dep't Commerce Nov. 30, 2020) and accompanying Issues and Decisions Memorandum at 17. Husteel addressed

each of these factors in its opening brief. Commerce's Reply Brief generally just repeats Commerce's determination from the administrative review, without addressing the arguments in Husteel's Opening Brief.

### i. Hot Rolled Coil Inputs

The record contains no evidence of meaningful subsidization of Korean HRC by the GOK. Commerce's statement that "Record evidence demonstrates significant subsidization of HRC by the GOK" that "significantly distorts the cost of producing WLP" is simply baseless. Defendant's Br. at 14-15. The record is clear that the CVD rates calculated by Commerce in effect during the POR showed that subsidization of HRC ranged from 0.54% to 0.58% (*See Countervailing Duty Order on Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Amended Final Results of the First Administrative Review*, 84 Fed. Reg. 35,604 (Dep't Commerce July 24, 2019) (Showing CVD rates of 0.54 – 0.58%) and thus far too small to "significantly distort" costs. Commerce's Response Brief does not directly rebut these facts discussed in Husteel's opening brief. Rather, Commerce asserts that this Court should not "reweigh the evidence Commerce relied upon when determining the existence of GOK intervention." Defendant's Br. at 16. However, a determination that 0.54 to 0.58% subsidization of HRC is sufficient to contribute to a situation where "the cost of materials . . . does not accurately reflect the cost of production in the ordinary course of trade" (19 U.S.C. § 1677b(e)) is clearly a determination that it unsupported by substantial evidence and should be overturned by the Court.

### ii. Korean Imports of HRC From China

Commerce's Response Brief does not present any bases to find that Korean imports of HRC from China are causing a PMS in the Korean WLP industry. As discussed in Husteel's opening brief, it is well recognized by Commerce that Chinese steel exports are a global issue

affecting global markets. The Court in *NEXTEEL I* cited favorably to Commerce's common sense preliminary determination in the OCTG from Korea First AR PMS Memo that the global effect of Chinese steel exports necessarily means that there is no particular market situation in Korea, or in regard to the specific respondents in the review. *NEXTEEL Co. v. United States*, 355 F. Supp. 3d 1336, 1349-50 (Ct. Int'l Trade 2019) ("*NEXTEEL I*"). Similarly, in the litigation of prior administrative reviews of this proceeding, the Court noted that global steel overcapacity does not support a determination that there is a distortion specific to the Korean market. *See Husteel*, 426 F. Supp. 3d at 1391; *Husteel*, 471 F. Supp. 3d at 1362. Commerce's Response Brief does not address this issue, nor does it point to any actual data showing distortions specific to the Korean HRC market.

### iii. Strategic Alliances

Commerce's determination that "strategic alliances" contributed to a PMS is not based on substantial evidence. The arguments in Commerce's Response Brief do not counter that fact that none of this information is relevant to the POR or the subject merchandise of this review. In fact, Commerce clearly states that "the record did not contain specific evidence showing that strategic alliances directly created a distortion in HRC pricing." Defendant's Br. at 18. Commerce maintains that the evidence is nonetheless relevant, but provides no legal theory of why alleged evidence that is not specific to the costs and does not directly show distortions to costs in the POR is probative. In fact it is not substantial evidence and should be disregarded by the Court.

### iv. Government Involvement in the Electricity Market Does Not Contribute to a PMS in Korea

Commerce's Response Brief fails to rebut the arguments in Husteel's opening brief that there is no record evidence demonstrating that there is GOK control over the electricity market

5

that contributes to a PMS. As discussed in Husteel's opening brief, Commerce has repeatedly found that electricity in Korea is not being provided for less than adequate remuneration. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Affirmative Determination*, 81 Fed. Reg. 53,439 (Dep't Commerce Aug. 12, 2016) and accompanying Issues and Decisions Memorandum at 36-53; *see also Maverick Tube Corp. v. United States*, 273 F. Supp. 3d 1293, 1312 (Ct. Int'l Trade 2017) (upholding Commerce's determination that electricity was not provided at less than fair value). Further, Commerce itself has noted that simple government intervention, without evidence of actual distortions, is not sufficient to find a PMS. *Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products from Korea: Final Results of Antidumping Duty Administrative Review*, 62 Fed. Reg. 18,404, 18,412 (Dep't Commerce Apr. 15, 1997). Accordingly, because Commerce cannot demonstrate any distortions to the electricity prices used to produce WLP, this cannot be considered a factor supporting a PMS determination.

For the reasons discussed above, each of the four allegations alleged to cause a PMS in the WLP industry of Korea are unsupported by record evidence. Further, even if these allegations were supported, Commerce has made no attempt to demonstrate that "those distortions prevent a proper comparison of normal value with export price or constructed export price." *Husteel*, 426 F. Supp. 3d at 1390; *Husteel*, 471 F. Supp. 3d at 1362. Absent such demonstrations, Commerce must find that each of these allegations, and its PMS determination, are unsupported.

    **C.    Commerce's Adjustment To COP For The Sales-Below-Cost Test To Address A PMS Is Not In Accordance With The Law**

As discussed in Husteel's opening brief, the antidumping statute does not provide for a cost-based PMS in computing COP for purposes of the sales-below-cost test. This Court has

examined this identical issue in numerous separate appeals, and has always come to that conclusion.  *See Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*, 426 F. Supp. 3d 1395, 1410-12 (Ct. Int'l Trade 2020); *Husteel*, 426 F. Supp. 3d at 1382-91; *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 422 F. Supp. 3d 1363, 1367-71 (Ct. Int'l Trade 2019).  Commerce's Response Brief correctly notes that these rulings are not binding on this Court.  Husteel maintains, however, that the rulings are instructive, and these decisions by the Court make abundantly clear that Commerce's practice of calculating a PMS adjustment to COP for purposes of the below-cost test is impermissible and is inconsistent with the statute.  Accordingly, because there are no material differences in this appeal that would warrant a different ruling on this issue, this Court should come to the same conclusion.

> **D.    The Final Results For NEXTEEL And SeAH Are Otherwise Not Supported By Substantial Evidence And Are Not In Accordance With Law, Which Resulted In The Overstatement Of The Average Dumping Margin Assigned To Husteel**

For the additional reasons discussed in the briefs being concurrently filed by NEXTEEL and SeAH, the *Final Results* with regard to NEXTEEL and SeAH are not supported by substantial evidence and otherwise is not in accordance with law.  Husteel adopts and incorporates by reference the arguments set forth in NEXTEEL and SeAH's briefs regarding the other issues affecting the calculation of the dumping margins for these companies and requests that any other relief granted by the Court and resulting adjustment to the individual weighted average dumping margins for NEXTEEL and SeAH be incorporated into the revised average dumping margin applied to Husteel.  *See Union Steel Mfg. Co., Ltd. v. United States*, 36 C.I.T. 717, 750-51, 837 F. Supp. 2d 1307, 1335-36 (Ct. Int'l Trade 2012); *Union Steel Mfg. Co., Ltd. v. United States*, 968 F. Supp. 2d 1297, 1326-27 (Ct. Int'l Trade 2014).

## II.   CONCLUSION AND RELIEF REQUESTED

Based on the foregoing, Husteel respectfully requests that this Court (i) hold that Commerce's *Final Results* and *Amended Final Results* are unsupported by substantial evidence and otherwise not in accordance with the law; (ii) remand the case to Commerce with instructions to correct the errors identified by the Court; and (iii) for such other and further relief that the Court deems just and proper.

Respectfully submitted,

/s/ Donald B. Cameron
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan

**MORRIS, MANNING & MARTIN LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel to Plaintiff-Intervenor Husteel Co. Ltd.*

October 20, 2021

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,217 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Donald B. Cameron

12760545 v1