# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| NEXTEEL CO., LTD. ET AL., | )<br>)<br>) |
| *Plaintiff and Consolidated Plaintiffs*, | )<br>)<br>) |
| and | )<br>) |
| HUSTEEL CO., LTD. and HYUNDAI STEEL COMPANY | )<br>) |
| *Plaintiff-Intervenors*, | ) Consol. Ct. No.: 20-03898 |
| v. | )<br>) |
| UNITED STATES, | )<br>) |
| *Defendant*, | )<br>) |
| and | )<br>) |
| CALIFORNIA STEEL INDUSTRIES, INC. ET AL., | )<br>) |
| *Defendant-Intervenors* and *Consolidated Defendant-Intervenors.* | )<br>)<br>) |

### NEXTEEL CO., LTD.'s COMMENTS ON REMAND

**ARNOLD & PORTER KAYE SCHOLER LLP**  
601 Massachusetts Avenue, N.W.  
Washington, D.C. 20001  
Phone: (202) 942-5000  
Fax: (202) 942-5999  

J. David Park  
Henry D. Almond  
Daniel R. Wilson  
Kang Woo Lee  

*Counsel to NEXTEEL Co., Ltd. Plaintiff*

**Dated: August 17, 2022**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A. THE COURT SHOULD FURTHER REMAND COMMERCE'S ALLOCATION OF COSTS ASSOCIATED WITH SUSPENDED PRODUCTION LINE LOSSES TO G&A EXPENSES..........................................2

III. CONCLUSION....................................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Dillinger France S.A. v. United States*,
   981 F.3d 1318 (Fed. Cir. 2020)................................................................................................1, 6

*Husteel Co., Ltd. v. United States*,
   520 F. Supp. 3d 1296 (Ct. Int'l Trade 2021) ........................................................................1, 6

*NEXTEEL Co., Ltd. v. United States*,
   569 F. Supp. 3d 1354 (Ct. Int'l Trade 2022) ..................................................................*Passim*

**Federal Statutes**

19 U.S.C. § 1677b(f)(1)(A).............................................................................................................4, 5

**Commerce Determinations**

*Welded Line Pipe from the Republic of Korea: Final Results of Antidumping Duty*
   *Administrative Review and Final Determination of No Shipments; 2017-2018*,
   85 Fed. Reg. 76,517 (Dep't Commerce Nov. 30, 2020).........................................................3, 4

I.      INTRODUCTION

On behalf of Plaintiff NEXTEEL Co., Ltd. ("NEXTEEL"), we hereby submit these comments on the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand, ECF No. 96, July 18, 2022 ("Remand Results"). *See NEXTEEL Co., Ltd. et al. v. United States*, 569 F. Supp. 3d 1354 (Ct. Int'l Trade 2022) ("*NEXTEEL*"). Commerce's Remand Results addressed three issues pertaining to NEXTEEL: (1) Commerce's particular market situation ("PMS") determination, (2) Commerce's treatment of NEXTEEL's production costs related to non-prime merchandise; and (3) Commerce's treatment of NEXTEEL's costs associated with suspended production lines. *See* Remand Results at 1.

Regarding the first two issues, NEXTEEL supports Commerce's Remand Results. With respect to the PMS issue, Commerce determined that, in consideration of the record facts and the Court's opinion, it was "unable to determine that a PMS exists," and, as a result, Commerce calculated NEXTEEL's antidumping duty margin without making a PMS adjustment. Remand Results at 6. With respect to costs related to the production of non-prime merchandise, Commerce likewise reversed its prior adjustment -- the adjustment which treated production costs for non-prime merchandise above the sales price of the merchandise as a production cost related to prime product production -- referencing the Court's opinion in this case, this Court's prior decision in *Husteel*, and the U.S. Court of Appeals for the Federal Circuit's decision in *Dillinger*. *See* Remand Results at 7-8 (citing *Husteel Co., Ltd. et al. v. United States*, 520 F. Supp. 3d 1296, 1308-1309 (Ct. Int'l Trade 2021) and *Dillinger France S.A. v. United States,* 981 F.3d 1318, 1321-24 (Fed. Cir. 2020). The Court should sustain Commerce's Remand Results on these two issues.

With respect to the third issue -- Commerce's treatment of costs associated with NEXTEEL's suspension of certain production lines -- Commerce continued to treat these costs as part of NEXTEEL's general and administrative ("G&A") costs, despite the fact that the costs were not recorded as such in NEXTEEL's normal books and they were not costs associated with producing subject merchandise in the period of review ("POR"). As discussed below, the Court should remand this issue again to Commerce so that the agency can recalculate NEXTEEL's antidumping duty margin without treating these costs as part of the company's G&A expenses.

## II.   ARGUMENT

### A.   THE COURT SHOULD FURTHER REMAND COMMERCE'S ALLOCATION OF COSTS ASSOCIATED WITH SUSPENDED PRODUCTION LINE LOSSES TO G&A EXPENSES

With respect to the allocation of costs for losses associated with suspended production on certain production lines, Commerce's Remand Results does not comply with the Court's Remand Order. The Court remanded the issue to Commerce, finding that: (1) Commerce did not "explain whether NEXTEEL suspended production on the lines in question for a portion of the period of review or the entirety of the period of review"; and (2) Commerce did not "address the extent to which losses associated with the suspension of non-subject merchandise production lines relate to the general and administrative expenses incurred in the production of subject merchandise, such that NEXTEEL's K-IFRS complaint books and records do not reasonably reflect costs." *NEXTEEL,* 569 F. Supp. 3d at 1372.

In its Remand Results, Commerce continues to draw an arbitrary line between its treatment of "routine maintenance" shutdowns and extended shutdowns, claiming that NEXTEEL's suspended losses do not qualify as a routine maintenance shutdown that would otherwise qualify as the cost of manufacturing products associated with those production lines.

*See* Remand Results at 8-9. As an initial matter on one hand, Commerce's stated analytical framework draws a distinction between temporary shutdowns (in which case the costs are attributed to the merchandise produced on the production lines) and extended shutdowns (in which case the costs are attributed to the company as a whole). *See Welded Line Pipe from the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 76,517 (Dep't Commerce Nov. 30, 2020) at Accompanying Issues and Decision Memorandum (Nov. 20, 2020) ("Final IDM"), ECF No. 52-4, at 48-49.

The Court recognized this temporal aspect of the analysis, highlighting that "if NEXTEEL suspended production for only a portion of the POR, then merchandise may have been produced on those lines during the period of review, allowing Commerce to associate the suspended production losses with the revenue generated from that merchandise." *NEXTEEL*, 569 F. Supp. 3d at 1372. On remand, however, Commerce has created a new framework that appears to treat *any shutdown* as a G&A expense. *See* Remand Results at 18.

In particular, while the Court recognized the issue as one of analyzing whether the costs for the suspended production lines at issue could be attributed to products produced on those lines during the POR, on remand Commerce appears to take the position that as soon as a production line is shut down, the costs associated with that production line *cannot* be attributed to the products produced on that line. As Commerce states:

> {W}hile products may have been produced during the POR on those lines that were later shut down, such production occurred prior to the shutdown and carry the cost of those lines during those periods. Revenues from products prior to the shutdown should not be associated with the suspended losses incurred during the shutdown periods, as those products already carry the full operating costs related to producing the products on those lines.

Remand Results at 18.

In essence, following Commerce's logic, as soon as there is a production shutdown of any kind, then the costs associated with that production line become G&A costs because there is no production on the production line at issue to bear the costs of that line. Commerce reached this conclusion in an effort to address the temporal problem that the Court recognized (*i.e.*, that there may be some POR production on those lines to bear the cost of the shutdown period), but in reaching this conclusion Commerce has further blurred the line between what it may consider "routine shutdown expenses" versus shutdowns "for an extended period of time." Final IDM at 48. Indeed, Commerce recognizes that "NEXTEEL had production lines that were both suspended for the whole POR and for a portion of the POR," but drew no distinction between them, treating all such shutdown costs as G&A expenses, regardless of whether there was production on those lines during the POR. Remand Results at 18. This treatment is inconsistent with the Court's order and warrants further remand for Commerce to reconsider its treatment of NEXTEEL's suspended production line costs.

Regardless of what products are produced on the production lines and how long the lines were shut down for, NEXTEEL continues to submit that 19 U.S.C. § 1677b(f)(1)(A) mandates that Commerce accept NEXTEEL's costs as reported. Under this section of the statute, Commerce is to rely upon a company's normal books and records when they are prepared in accordance with the home country GAAP and "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). G&A expenses are those general administrative expenses that are not associated with expenses incurred in producing or selling the merchandise. Suspended losses are not related to the company's overall management of its operations, but rather consisted of maintenance and depreciation expenses NEXTEEL incurred on production lines that were temporarily suspended. NEXTEEL's ordinary accounting

4

treatment of these costs *was reasonable* and Commerce's conclusory analysis is flawed in that it does not demonstrate that NEXTEEL's costs were not reasonable, as required by the statute prior to departing from the company's costs.

Commerce can only legally reclassify the costs if NEXTEEL's normal, K-IFRS-compliant, accounting treatment is not reasonable. *See* 19 U.S.C. § 1677b(f)(1)(A). Commerce's Remand Results concludes that NEXTEEL's reporting is not reasonable because its costs "do not reasonably reflect the actual COP of individual products." Remand Results at 9. In responding to NEXTEEL's comments on the Draft Remand, Commerce explained that it was concerned with the subject merchandise and whether general costs were appropriately attributed to subject merchandise. Remand Results at 19. But Commerce only gets to this question if it can demonstrate that NEXTEEL's K-IFRS consistent costs (which did not treat the suspended production lines as a general cost) are not reasonable.

Suspended losses are not related to the company's overall operations, but rather consisted of expenses NEXTEEL incurred on specific production lines that were temporarily suspended. Although production was suspended, those costs did not relate to the production of subject merchandise. In other words, NEXTEEL's costs from suspended production are both K-IFRS compliant *and* the reported costs for welded line pipe production reasonably reflect the costs associated with the production and sales of the subject merchandise (as all actual costs incurred to produce the subject merchandise were recorded in the company's books and reported to Commerce as such). That is, in the normal course of business and consistent with K-IFRS, the costs are not attributed to NEXTEEL's line pipe production costs *which is reasonable*. In the normal course of business, and again consistent with K-IFRS, the cost are not considered general or administrative, *which is also reasonable*. Because this treatment is reasonable, and consistent

with K-IFRS, pursuant to 19 U.S.C. § 1677b(f)(1)(A), Commerce cannot simply adjust and move the costs as it sees fit.

As the Court stated, "*Dillinger* requires that constructed value reasonably reflects a respondent's actual costs, whether or not the respondent's books and records reasonably reflects such costs." *NEXTEEL,* 569 F. Supp. 3d at 1371. While Commerce "may deviate from the costs reflected in a respondent's books and records," the Court interpreted *Dillinger* as requiring that Commerce show that "such costs do not 'reasonably reflect the costs associated with the production and sales of the merchandise.'" *Id.* Commerce's analysis does not show that NEXTEEL's costs of suspended production do not "reasonably reflect the costs associated with the production and sales of the merchandise." While this Court has also recently reasoned that "at some point an extended shutdown suggests that the costs of that product line are more akin to expenses borne by the company in its general operations," *see Husteel*, 520 F. Supp. 3d at 1307-1308, NEXTEEL continues to submit that Commerce has not established that NEXTEEL's reported costs to produce welded line pipe are not reasonable. Accordingly, on further remand, Commerce should accept NEXTEEL's costs as reported and not treat the suspended production line costs as a G&A expense.

## III. CONCLUSION

For the foregoing reasons, NEXTEEL respectfully requests that this Court hold Commerce's treatment of NEXTEEL's suspended production line costs to be unsupported by substantial evidence and otherwise not in accordance with law. NEXTEEL further requests that this Court remand the agency's determination with instructions to Commerce to revise its treatment of NEXTEEL's suspended production line costs consistent with these comments.

                                      Respectfully submitted,

                                      /s/ J. David Park

J. David Park
Henry D. Almond
Daniel R. Wilson
Kang Woo Lee

ARNOLD & PORTER KAYE SCHOLER LLP
601 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
PHONE: (202) 942-5000
FAX: (202) 942-5999

*Counsel to NEXTEEL Co., Ltd.*
*Plaintiff*

**Date: August 17, 2022**

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| NEXTEEL CO., LTD. ET AL.,<br><br>*Plaintiff and Consolidated Plaintiffs,*<br><br>and<br><br>HUSTEEL CO., LTD. and HYUNDAI STEEL COMPANY<br><br>*Plaintiff-Intervenors,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>CALIFORNIA STEEL INDUSTRIES, INC. ET AL.,<br><br>*Defendant-Intervenors* and *Consolidated Defendant-Intervenors.* | Consol. Ct. No.: 20-03898 |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned hereby certifies that the attached Remand Comments of NEXTEEL Co., Ltd. filed on August 17, 2022 contain 1,792 words, exclusive of the Table of Contents, Table of Authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare this memorandum, and therefore complies with the 10,000 word count limitation set forth in the Court's Chambers Procedures.

By:                                                                                       /s/ J. David Park
                                                                                              J. David Park

**Date: August 17, 2022**